IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| JOHN M. CORRADO, ET AL. | |
| | : |
| | |
| v. | :    Civil Action No. DKC 2008-0015 |
| | : |
| | |
| LIFE INVESTORS OWNERS | |
|  PARTICIPATION TRUST | : |
|  AND PLAN, ET AL. | |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, is a motion to dismiss Plaintiffs' amended complaint filed by Defendants Life Investors Insurance Company of America ("Life Investors"), Life Investors Owners Participation Trust and Plan ("the Plan"), and John Doe Numbers One, Two, and Three, Trustees of the Plan.[1]  (Paper 28). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendants' motion to dismiss will be denied.

**I.   Background**

This case arises from Plaintiffs' claim for benefits under a pension plan provided by Defendant Life Investors.  Plaintiffs are

---

[1] Plaintiffs have also named Bankers United Life Assurance Company d/b/a Life Investors Insurance Company of America ("Bankers") as a Defendant in this action.  Defendants assert that Bankers fully merged into Life Investors, and Plaintiffs do not dispute this assertion in their opposition papers.

Charleen Corrado and Federal City Region, Inc. ("FCR").[2]   Life Investors established the Plan, and Plaintiffs claim to be beneficiaries.

In 1977, John Corrado entered into a General Agent's contract with Life Investors.   As a General Agent, Mr. Corrado received commissions on the insurance policies he sold and, in turn, contributed a portion of those commissions to the Plan.   The same year, Mr. Corrado formed a related marketing organization, Plaintiff FCR, which entered into a separate General Agent's contract with Life Investors.   FCR also received commissions on the insurance policies it sold and contributed a portion of those commissions to the Plan.   Beginning in 1981, Mr. Corrado's contributions to the Plan were no longer credited to his own account; rather, they were placed into a new account established by Life Investors in the name of FCR.   Life Investors provided assurances to Mr. Corrado that FCR could lawfully participate in the Plan.[3]

---

[2] John Corrado originally filed this action against Defendants, but passed away in May 2008. (Paper 27, ¶ 6).   His wife, Charleen Corrado, entered the case as substitute Plaintiff for her late husband in her capacity as personal representative and in her personal capacity to receive the proceeds of Mr. Corrado's account.   (Paper 25).

[3] While Mr. Corrado contends that Life Investor's placement of these funds into FCR's account, without his consent or permission, was illegal, the claims in the amended complaint do not relate to these alleged acts.   Indeed, any such claim would most likely be time-barred under 29 U.S.C. § 1113.

In or around January 1984, a dispute arose between Life Investors and Mr. Corrado regarding certain debts Life Investors claimed Mr. Corrado and/or FCR owed to it.  While the complaint does not elaborate as to the nature of these debts, they were apparently incurred by agents or sub-agents working under Mr. Corrado and/or FCR.  A series of letters attempting to reach a settlement of the dispute ultimately led to Life Investors releasing Mr. Corrado and FCR from any financial responsibility for these agent and sub-agents.  This disposition was memorialized in a letter to Mr. Corrado from William R. Kuennen, Vice President of Bankers United Life Assurance Company, dated April 1, 1987. (Paper 27, Ex. D).

In January 1987, the Plan was amended for the purpose of purchasing a group annuity contract.  The group annuity contract was purchased with the contributions of Mr. Corrado and FCR, along with those made by other Plan participants, including Life Investors' employees.  Under the terms of the Plan, the group annuity contract was entrusted to a Board of Trustees assigned to administer the Plan.  Under the restated Plan, Life Investors had the power, upon resolution of its Board of Directors, to amend or terminate the Plan, in which event it was to "promptly give notice of any such action to all Participating Companies and to their respective Participants affected thereby." (Paper 27, Ex. A, at ¶ 16.1).  The new Plan also provided that any subsequent amendment

"may affect the participants, but may not diminish the account of any participant as of the effective date of such modification or divest him of any right or interest which was then vested in him." (*Id.*).

On November 1, 1994, the Trustees amended and restated the Controlling Trust Agreement to preclude the participation of Life Investors' employees.  These amendments additionally granted the Trustees the "absolute right" to distribute a participant's account in satisfaction of any debt owed by the participant to Life Investors.  Plaintiffs allege that they were never given notice that the Plan had been amended.  Notwithstanding these amendments, Life Investors' employees continued to participate in the Plan. Plaintiffs claim that between 1994 until at least 2002, the Trustees' filings with the United States Department of Labor, declared that the Plan was a single employer pension plan.[4]

Mr. Corrado requested partial distributions from the Plan in February 1994, March 1996, and January 1998, and received checks for various amounts drawn from FCR's account.  His request for a partial distribution in January 2001, however, was denied due to a debt Life Investors claimed that he owed it.  Mr. Corrado

---

[4] Federal law requires that corporations with a plan covered by ERISA file an "Annual Report/Return of Employee Benefit Plan," also known as a Form 5500, every year with the Internal Revenue Service, the Department of Labor, and the federal Pension Benefit Guaranty Corporation.  *Johannssen v. Dist. No. 1--Pacific Coast Dist.*, 136 F.Supp.2d 480, 489 (D.Md. 2001).

questioned the denial and requested that the Plan provide him with various documents related to his account and the Plan in general. (Paper 27, Ex. F).  Life Investors did not provide the requested information, but instead granted Mr. Corrado's requested distribution.  Plaintiffs allege that at no time prior to May 2008 did Life Investors attempt to collect the "debt" that Mr. Corrado allegedly owed.

In 2003, Life Investors and the Plan's Trustees transferred $21 million of the Plan's assets to a new trust.  The assets included accounts held in the name of, and for the benefit of, Mr. Corrado.  Plaintiffs allege that these accounts were fully vested, non-forfeitable, and non-alienable.  At the same time, Life Investors and the Plan's Trustees renamed the Plan "Life Investors ERISA Ownership Participation Trust," and retained in the newly-named trust the contributions of the Life Investors' employees.  According to Plaintiffs, neither Life Investors nor the Trustees notified Mr. Corrado of the transfer, and Mrs. Corrado did not learn of the event until July 2008, after her husband's death.

Mr. Corrado made another request for a partial distribution in June 2007.  The Plan denied the request, explaining that his account was being held as collateral for an alleged debt to Life Investors.  (Paper 27, Ex. G).  As he had done before, Mr. Corrado responded with a request for information regarding his account and

the Plan.  To date, the Plan has refused to make the partial distribution or provide the information Mr. Corrado requested.

Plaintiffs John Corrado and FCR filed a complaint in this court alleging several violations of ERISA.  On March 21, 2008, Defendants filed a motion to dismiss for lack of subject matter jurisdiction. (Paper 7).  Following a hearing, Defendants' motion was denied without prejudice.  (Paper 25).  Leave was granted for Plaintiffs to amend their complaint, as Plaintiffs claimed to have discovered that their assets had been transferred into a new trust during the early stages of this litigation.  Plaintiffs filed their first amended complaint on August 15, 2008, alleging: (1) failure of the Plan and Trustees to provide ERISA-covered information to Plan beneficiaries in violation of 29 U.S.C. § 1132; (2) breach of fiduciary duty in violation of 29 U.S.C. § 1104; (3) breach of fiduciary duty in violation of  29 U.S.C. § 1106(a)(1)(D); (4) breach of fiduciary duty in violation of 29 U.S.C. § 1106(b)(2); (5) a claim against Life Investors for wrongful participation in a breach of trust by another; and (6) a claim for benefits by Plan beneficiaries.[5]  (Paper 27).  On September 8, 2008, Defendants filed their motion to dismiss Plaintiffs' first amended complaint for lack of subject matter jurisdiction.  (Paper 28).

---

[5]  Plaintiffs allege that count I does not seek benefits, but instead seeks to impose statutory penalties flowing from the refusal to provide the information that Mr. Corrado requested. Plaintiffs allege that counts II, III, and IV seek only equitable relief, and that count VI is the only count that seeks benefits.

## II.  Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond*, 945 F.2d at 768.  Sometimes jurisdictional facts are so intertwined with the merits of a claim that the jury is the proper trier of contested facts.  *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009).

## III. Analysis

A plaintiff must possess both Article III and statutory standing to bring a suit in federal court.  *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 333-34 (4th Cir. 2007). To establish Article III standing, Plaintiffs must demonstrate: (1) an injury in fact; (2) a causal relationship between the injury and the challenged conduct of the defendant; and (3) that the injury

would likely be redressed by a favorable decision against.  *Id*. at 334 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).   The issue of standing is "jurisdictional in nature." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1464 n.6 (4th Cir. 1996).

Defendants argue that Plaintiffs lack standing to bring this action because: (1) the Plan is not an "employee pension benefit plan," as defined under ERISA; (2) even if the Plan were covered by ERISA, Plaintiffs do not fall within the limited class of parties that are entitled to seek redress; and (3) Defendants' transfer of Plaintiffs' assets into a new plan without Plaintiffs' knowledge or consent did not constitute a breach of a fiduciary duty.   As discussed below, Plaintiffs do have standing to bring their claims.

## A.  Employee Pension Benefit Plan

Defendants insist that the Plan is not an "employee pension benefit plan," as defined under ERISA, because its express terms fail to include employees as Plan participants.   ERISA defines an "employee pension benefit plan" as:

> any plan, fund or program which was . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A).  Because Plaintiffs are not "employees," Defendants contend they do not have standing to bring their ERISA claims.

The standing analysis in this case is complicated by the fact that the parties identify several different documents as "the Plan."  Plaintiffs' amended complaint labels Defendant Life Investors Owners Participating Trust as the "Plan" or "OPT." (Paper 27, ¶ 9).  The first Plan document at issue is the 1987 version.  (See Paper 27, ¶ 24 and Exhibit A).  Plaintiffs refer to this "Plan" in their opposition to Defendants' motion to dismiss: "The amended complaint consists of four counts that seek solely equitable relief on behalf of the 1987 OPT. . . ."  (Paper 38 at 4).  Defendants, on the other hand, insist that the suit is based on the 1994 version, which was also attached to Plaintiffs' amended complaint.  (Paper 27, Ex. E).

The Plan's preamble, as it was amended in 1994, provides that its purpose is "to encourage the interest of *non-employee* Sales Representatives, General Agents, and Marketing Directors of the Participating Companies."[6]  (Paper 27, Ex. E, at 1) (emphasis added).  Observing that, Defendants argue that the amended plan

---

[6] The Plan's purpose prior to the 1994 amendment, by contrast, was "to encourage the interest of Sales Representatives, General Agents and Marketing Directors of the Participating Companies and to help provide additional financial security for their retirements and for other purposes[.]." (Paper 27, Ex. A, at 1).  This language, unlike the amended 1994 Plan, does not distinguish between employees and non-employees.

could not be an ERISA plan because ERISA applies only to an employee pension benefit plan.  *See* 29 C.F.R. § 2510.3-3 ("plans without employees" are excluded from the ERISA definition of "employee benefit plan."); *see also Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 448 (4th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994) ("Department of Labor regulations further provide that the plan must involve at least one employee . . . to satisfy the 'participant' requirement").  Defendants insist that the plain language of the Plan makes clear that it does not cover employees.

Plaintiffs counter that between 1994 and at least 2002, the Plan Trustees regularly filed Form 5500 with the Department of Labor, declaring that the Plan was a single employer pension plan.  Defendants acknowledged on the forms they filed in 1993 and 1994 that "70 employees (roughly 5% of participants) are still covered under the Plan.  This is the only reason for filing this Form 5500 under ERISA." (Paper 15, Exs. 2 & 3).  Employee benefit plans are "governed by written plan documents filed with the Secretary of Labor."  *Gable v. Sweetheart Cup Co., Inc.*, 35 F.3d 851, 855 (4th Cir. 1994), *cert. denied*, 514 U.S. 1057 (1995); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("ERISA gives effect to this 'written plan documents' scheme through a comprehensive set of 'reporting and disclosure' requirements").

Based on Defendants' assertions to the Department of Labor, there is some evidence that Defendants believed the Plan was

covered by ERISA, namely, because employees participated in the Plan, at least before Plaintiffs' assets were transferred to the new trust in 2003.  Moreover, Plaintiffs allege, and Defendants do not dispute, that, in 2003, the Plan was renamed "Life Investors ERISA Ownership Participation Trust."  (Paper 27, at ¶ 51).

Under these circumstances, the jurisdictional question simply cannot be resolved on the limited record before the court.  To the extent that Plaintiffs assert a claim based on the 1987 OPT, ERISA jurisdiction likely exists.  Conflicting facts, well-intertwined with the merits, are presented concerning the 1994 OPT.  As the United States Court of Appeals for the Fourth Circuit observed in *Jadhav*, 555 F.3d at 348, where subject matter jurisdiction is contested and "satisfaction of an essential element of a claim for relief is at issue . . . the jury is the proper trier of contested facts." (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). A determination as to whether the Plan is an employee pension benefit plan under ERISA is certainly an essential element of the claims raised by Plaintiffs in their amended complaint. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

### B.  Whether Plaintiffs Are Beneficiaries

Defendants next argue that even if the Plan is covered by ERISA, Plaintiffs have no standing to bring this action because ERISA expressly limits the class of litigants who may properly

assert claims in civil actions to participants and beneficiaries. 29 U.S.C. § 1132(a).[7]  Defendants insist that Plaintiffs do not fall within either of these classes, while Plaintiffs maintain that they have standing as beneficiaries.

Under 29 U.S.C. § 1001(8), a beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." Plaintiffs do not allege that they were designated as beneficiaries by any Plan participant; rather, they assert that they are beneficiaries because they are designated as such by the terms of the Plan itself.  Plaintiffs argue that the court should adopt the interpretation of a "beneficiary" under ERISA set forth by the United States Court of Appeals for the Seventh Circuit in *Ruttenberg v. United States Life Ins. Co. in the City of New York,* 413 F.3d 652, 661 (7th Cir. 2005):

---

[7]  29 U.S.C. § 1132(a) provides, in relevant part:

    (a) Persons empowered to bring a civil action

    A civil action may be brought--

    (1) by a participant or beneficiary-

    (A) for the relief provided for in subsection (c) of this section, or

    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

> Read alone, the ERISA definition of "beneficiary" seems clear. A beneficiary is defined as one who is "designated by a participant, *or by the terms of an employee benefit plan*, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (emphasis added). By employing commas to set the emphasized language apart, the statute appears to establish two distinct classes of individuals who might be "beneficiaries": those designated by a participant and those . . . directly designated to receive benefits by the plan itself.

Plaintiffs point to several other courts that have similarly held that a person who qualifies in his own right for a benefit under the terms of an ERISA-covered employee benefit plan is deemed a "beneficiary" under ERISA. *See, e.g., Hollis v. Provident Life & Accident Ins. Co.*, 259 F.3d 410, 416 (5th Cir. 2001) (holding that an independent contractor qualified as an ERISA beneficiary, with the determining factor being whether he was or might become entitled to the benefit under the policy), *cert. denied*, 535 U.S. 986 (2002) ; *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 409 (9th Cir.) ("Any person designated to receive benefits from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA"), *cert. denied*, 516 U.S. 942 (1995); *Wolk v. UNUM Life Ins. of Am.*, 186 F.3d 352, 356 (3rd Cir. 1999) (partner in a law firm who was not considered an employee was treated as an ERISA beneficiary where she was designated to receive benefits under the employee plan), *cert. denied*, 528 U.S. 1076 (2000). Plaintiffs insist that Mr. Corrado and FCR, as persons entitled to a benefit

under the terms of the 1987 Plan, were beneficiaries of that Plan as of the date when Defendants transferred their assets into a new trust.

Defendants counter that Fourth Circuit precedent does not support an interpretation of 29 U.S.C. § 1002(8) conferring ERISA "beneficiary" status on Plaintiffs.  Specifically, Defendants cite a footnote in *Darden v. Nationwide Mutual Ins. Co.*, 796 F.2d 701, 704 n.3 (4th Cir. 1986), which explains that "[a] 'beneficiary,' for the purposes of ERISA, is a person other than one whose service resulted in the accrual of the benefits, but who is designated as a recipient of benefits accrued through the service of another." Defendants maintain that Plaintiffs are not beneficiaries under this definition, as their claim to benefits is a result of their own contributions to the Plan and they were not designated to receive benefits by another.  Defendants further argue that the *Darden* Court held that the benefits under an employee pension benefit plan can only be earned as a result of service performed by an employee, and observe that, here, it is undisputed that Plaintiffs were never employees of Life Investors.

Defendants' reliance on *Darden* is misplaced.  The *Darden* court confronted only the issue of whether an independent contractor was an "employee" for the purposes of ERISA.  *Darden*, 796 F.2d at 704. Therefore, the Fourth Circuit's explanation of what constitutes a beneficiary was merely *dicta*, and the placement of the statement in

14

a footnote is also indicative of its ancillary importance.[8] Further, Defendants have not cited a case in the twenty-three years since *Darden* was decided that adopted this interpretation of an ERISA beneficiary. Thus, the *dicta* in *Darden* does not foreclose the possibility that 29 U.S.C. § 1002(8) confers beneficiary status on Plaintiffs.

Finally, Defendants contend that because the amended complaint alleges that Mr. Corrado was a beneficiary and designated Mrs. Corrado as the person to receive his benefits upon his death, Mrs. Corrado is a "beneficiary of a beneficiary" and not entitled to standing under ERISA. Defendants insist that no provision of ERISA provides standing to a person in this position. Defendants' argument is unpersuasive. A number of courts have held that personal representatives and estate administrators have derivative standing for purposes of ERISA actions. *See, e.g., James v. La. Laborers Health & Welfare Fund*, 766 F.Supp.530 (E.D.La. 1991) (plaintiff had derivative standing to sue for the decedent's health benefits because allowing such an action would promote ERISA's goal of protecting participants and beneficiaries); *Cottle v. Metro.*

---

[8] The Supreme Court of the United States granted *certiorari* in *Darden* and the case was ultimately reversed and remanded, but for reasons unrelated to the issue before this court. *See Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992). The Court did not address the scope of "beneficiary" standing under ERISA, and merely clarified that traditional agency principles govern whether a person is an "employee" within the definition of "participant" under ERISA.

*Life Ins. Co.*, No. 92 C 1452, 1993 WL 8201 (N.D.Ill. Jan. 13, 1993) (unpublished) (surviving spouse had derivative standing to file ERISA action as trustee of husband's estate).   An assignee of benefits under an ERISA plan becomes a statutory "beneficiary" and may bring an action to collect the benefits.  *Decatur Mem'l Hosp. v. Conn. Gen. Life Ins. Co.*, 990 F.2d 925, 927 (7th Cir. 1993). Accordingly, Mrs. Corrado has derivative standing.

### C.  Transfer of Plaintiffs' Assets Into a New Plan

Defendants further argue that Plaintiffs have no standing to bring a claim under 29 U.S.C. § 1058 because Plaintiffs were never "participants" of the Plan.   Section 1058, the ERISA provision addressing the transfer of plan assets, provides that a plan cannot transfer its assets "unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the . . . transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the . . . transfer (if the plan had then terminated)."

Plaintiffs counter that § 1058 deals with the merger, consolidation, and/or transfer of assets between a "pension plan" and any other "plan."   According to Plaintiffs, there is no question that the 1987 Plan was a pension plan, as that term is defined in ERISA; in fact, at least until 2002, Life Investors identified itself as such in its filings with the Department of Labor.   Plaintiffs point out that ERISA defines the term "plan" to

include an employee welfare plan, an employee pension benefit plan, or a plan that is both.  29 U.S.C. § 1002(3).  They allege that Defendants intentionally and illegally amended the Plan such that it was neither an employee welfare plan nor an employee pension benefit plan.  Because the Plan, as amended in 2003, was no longer a "plan" under § 1002(3), Plaintiffs argue, § 1058 does not apply.

Defendants claim that they did not breach their fiduciary duty because a sponsor's decision to amend the terms of a plan is a settlor function not subject to fiduciary obligations.  The responsibilities of a fiduciary are set forth by 29 U.S.C. § 1104(a):

> . . . [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries  . . .
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . .

Defendants point to several cases that have held that plan sponsors do not act as "fiduciaries" within the meaning of ERISA when they amend a pension plan.  *See, e.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("an employer's decision to amend a pension plan concerns the composition or design of the plan itself

and does not implicate the employer's fiduciary duties"); *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) (holding that an employer does not act as a fiduciary when it establishes, modifies, or terminates an ERISA-covered pension plan); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 719-20 (6th Cir. 2000) (holding that the transfer of assets from one plan to another was not a decision subject to ERISA's fiduciary obligations).

Plaintiffs argue that these cases are distinguishable because, here, Life Investors' transfer of Plaintiffs' assets into the new trust was illegal, as it was done without notice and adversely affected Plaintiffs' access to benefits under the Plan. Plaintiffs contend that these facts are similar to those presented in *John Blair Commc'ns, Inc. Profit Sharing Plan v. Telemundo Group, Inc. Profit Sharing Plan*, 26 F.3d 360 (2nd Cir. 1994). In *Telemundo Group*, the plaintiffs asserted that the defendants violated their fiduciary duties when, during the spinoff of a predecessor-defined contribution plan, the defendants transferred assets from the old plan to a new plan. The defendants failed to transfer any appreciation of these assets from the date they were valued until the date they were actually transferred. The plaintiffs also alleged that the defendants violated ERISA when they kept the surplus income earned during the defendants' delay in transferring the assets from an equity fund to a short term investment fund. The Second Circuit held that the defendants breached their

fiduciary duty, noting that the decisions of a fiduciary "must be made with an eye single to the interests of the participants and beneficiaries." *Telemundo Group*, 26 F.3d. at 367 (quoting *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982)).

Plaintiffs argue that, like the defendants in *Telemundo Group*, Defendants in this case acted with an eye only toward the interests of Life Investors, and not toward Plaintiffs or other individuals who contributed to the Plan. Plaintiffs point out that the discovery authorized by the court did not reveal a single document indicating that the Trustees considered or even voted on the transfer of assets that were committed to their control and responsibility. They insist this is precisely the type of self-dealing that ERISA was designed to prevent, and that they have standing as beneficiaries to seek appropriate relief under ERISA. Defendants counter that, unlike the defendants in *Telemundo Group*, Plaintiffs have not alleged, nor can they demonstrate, that their accounts were less after the transfer of assets than before. Defendants are incorrect. Plaintiffs observe that during the course of discovery they found that a termination charge was assessed against the non-employee beneficiaries of the 1987 Plan. (Paper 38, at 10 n.2). Thus, Plaintiffs claim they have alleged that their assets were less after the transfer, as compared to before.

Upon review of the parties' arguments, Plaintiffs have standing to bring this action.  Plaintiffs have suffered an injury in fact, as Mr. Corrado's request for a partial distribution from the Plan was denied, and Plaintiffs cannot access funds to which they claim to be entitled under the Plan.  Plaintiffs have also demonstrated that it was Defendants' transfer of Plaintiff's assets into a new trust that led to their injury, thus establishing a causal relationship between the injury and the challenged conduct of Defendants.  Moreover, the injury would likely be redressed by a favorable decision against Defendants because Plaintiffs would be able to obtain the partial distribution they requested, as well as equitable relief.  To the extent that any doubt remains as to whether Plaintiffs have standing, courts deciding jurisdictional issues under ERISA should "treat as a 'participant' for jurisdictional purposes anyone with a colorable claim to benefits . . . , an approach equally applicable when a person claiming to be a 'beneficiary' files suit." *Riordan v. Commonwealth Edison Co.,* 128 F.3d 549, 552 (7th Cir. 1997) (quoting *Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir. 1991)).  Here, Plaintiffs' amended complaint has presented a colorable claim that Plaintiffs are beneficiaries under the Plan.  As such, it will not be dismissed.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion to dismiss will be denied.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge