IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLEEN CORRADO, PERSONAL          :
REPRESENTATIVE OF THE ESTATE
OF JOHN M. CORRADO, et al.          :

                                    :

    v.                              :    Civil Action No. DKC 08-0015

LIFE INVESTORS OWNERS               :
PARTICIPATION TRUST AND PLAN,
et al.                              :


**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., are the cross motions for summary judgment filed by Defendants Life Investors Owners Participation Trust and Plan, Life Investors Insurance Company of America, John Clevenger, Kevin Crist, Mike Kirby, Frank Kneeland, William Kuennen, R. Joe Smith, Mark Theil, and 2003 Life Investors Owners Participation Trust (ECF No. 60) and Plaintiffs Charleen Corrado as the personal representative of John Corrado, executrix of his estate, and in her personal capacity,[1] and Federal City Region, Inc. (ECF No. 62). The issues are fully briefed and the court now rules pursuant to

_____

    [1] John Corrado originally filed this action against Defendants, but passed away in May 2008. (ECF No. 27 ¶ 6). Plaintiff's motion to substitute Charleen Corrado as a party was granted on August 1, 2008. (ECF No. 26).

Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion for summary judgment will be granted and Plaintiffs' motion for summary judgment will be denied.

## I.    Background

This case arises from Plaintiffs' claim for benefits under a pension plan provided by Defendant Life Investors Insurance Company of America ("Life Investors"). The background facts are set forth in the court's memorandum opinion of September 21, 2009. For the purposes of summary judgment, the undisputed facts are as follows. Life Investors is an insurance company licensed to do business in Maryland and the successor to Bankers United Life Assurance Company ("BULAC"). A predecessor to Defendant Life Investors established a trust entitled Life Investors Ownership Participation Trust, effective July 1, 1966. On or before December 10, 1975, Life Investors also established a plan entitled Life Investors Ownership Participation Trust and Plan ("OPT" or "Plan"). Over the years, Life Investors and the Trustees have agreed to modify or amend the terms of the Trust Declaration, pursuant to which the Plan and Trust are administered. The Third Restated Declaration of the Trust was agreed to in 1975, and the Fourth Restated Declaration in 1977. The Third Restated Declaration provided in Article VII(b) for "assignment of the value of the Participant's account herein . .

. to the extent of a Participant's indebtedness to any Participating Company" and in Article IX(i) stated that "No distribution shall be made to a Participant while there remains any indebtedness of the Participant to a Participating Company." (ECF No. 61-3). The Fourth Restated Declaration contained similar provisions. (ECF No. 61-6). In January of 1987, the Fifth Restated Declaration was agreed to and provided in Article 7.2 for "assignment of the Participant's account as security for such indebtedness to any Participating Companies." (ECF No. 61-12 ¶ 7.2). Article 7.2 also referenced Article 9.7 which provides: "No distribution shall be made to a Participant while there remains any indebtedness whether accrued or not of the Participant to a Participating Company." (ECF No. 61-13 ¶ 9.7). In addition, since at least August of 1977, it was the policy of Life Investors to secure any advances it made to non-employee beneficiaries through those individuals' accounts in the OPT. (ECF No. 61-27, at 4).

John Corrado and FCR were general agents for BULAC and sold insurance policies on commission; they were not employees of BULAC. A portion of the commissions received by Corrado and FCR were deposited into the Plan. In August 1977, Corrado, on behalf of himself and FCR, signed agreements giving BULAC "interest in the Life Investors Ownership Participation Trust . . . as security for the payment of any claims or amounts due or

to become due from [Corrado or FCR] to BULAC." (ECF Nos. 61-7 and 61-9). On March 6, 1987, Corrado, on behalf of himself and FCR, again gave BULAC first liens on their respective accounts in the Plan, as defined by the Fifth Restated Declaration. (ECF No. 61-14). On March 4, 1994, January 3, 1995, February 19, 1996, and January 13, 1997, Corrado, on behalf of himself, requested and received withdrawals from his OPT account. (ECF Nos. 61-16, 61-18, 61-20, and 61-22). On June 23, 1993, January 3, 1995, February 19, 1996, January 13, 1997, January 2, 1998, and June 15, 1999, Corrado, on behalf of FCR, requested and received withdrawals from the FCR Trust account. (ECF Nos. 61-15, 60-19, 61-21, 61-23, and 61-24). On each form submitting a request for a withdrawal, Mr. Corrado confirmed his understanding with a mark next to the statement "if I have a debit balance with the company, my OPT account balance must remain sufficient to cover this debt or my withdrawal amount may be reduced." (ECF Nos. 61-15, 61-16, 61-18, 61-19, 61-20, 61-21, 61-22, 61-23, and 61-24).

On December 22, 2000, Corrado sent a letter to William Kuennen, a trustee of the OPT, indicating that he wanted to close and withdraw the full amounts in his OPT account and in FCR's OPT account. (ECF No. 61-25). On December 26, 2000, the OPT administrator provided a written response enclosing forms for Mr. Corrado to complete to liquidate and close the accounts

and stating that once they were returned the net proceeds from the accounts (after repaying the debt of approximately $812,000) would be available. (ECF No. 61-26). Mr. Corrado did not return the forms and instead on January 3, 2001, his attorney Gary Simpson sent a letter stating that he did not understand what was meant by "net proceeds after debt" and that "Mr. Corrado has full right and title to the entire OPT and that there is no debt thereon." (ECF No. 61-28). Mr. Simpson also requested that the administrator "provide any documents or records which document or evidence this alleged debt." (*Id.*). Then on March 5, 2001, counsel for Mr. Corrado and FCR requested copies of the following OPT documents: Summary Plan Description, the Plan's claims and appeals procedures, the most recent copy of the Plan's Annual Report, the Statement of the Total Benefits Accrued for John M. Corrado, the Statement of the Total Benefits accrued for Federal City Region, Inc., the Statement of John M. Corrado's non-forfeitable pension benefits, and the Statement of Federal City Region Inc.'s non-forfeitable pension benefits. (ECF No. 61-29). The letter also explained Mr. Corrado and FCR's position that ERISA provisions, specifically §§ 206(d), 504(a)(1)(c) and 409 (29 U.S.C. §§ 1056(d), 1134(a)(1)(c), and 1109), precluded the OPT Trustees from honoring any claims asserted by a participating company or any other third party that a participant has assigned all or a

portion of his individual account to that participating company or third party. In addition, the letter stated that in the event BULAC took money from the OPT accounts of Mr. Corrado or FCR, "Mr. Corrado will bring an action in the court of appropriate jurisdiction for breach of the Trustee's fiduciary duties and will seek to impose personal liability on them for any loss sustained. When he prevails in such an action, he will also seek payment of his attorneys fees and costs as provided by section 502 of ERISA." (ECF No. 61-29).

After receiving the letter, Defendants did not provide Mr. Corrado or FCR with distributions of the full amounts of their OPT accounts, but Mr. Corrado and FCR did not press the issue. Then on January 10, 2002, Mr. Corrado, on behalf of FCR, requested and was permitted to withdraw twenty percent of the value of FCR's OPT account and his personal OPT account (ECF No. 61-33, and 61-35). On the forms submitting the requests for a withdrawal, Mr. Corrado again confirmed his understanding that "if I have a debit balance with the company, my OPT account balance must remain sufficient to cover this debt or my withdrawal amount may be reduced." (*Id.*). After these distributions were made, the remaining account balances were sufficient to cover any debts to participating companies. (ECF No. 61-30 ¶ 3).

On May 15, 2003, Life Investors' Board of Directors divided the Life Investors Participation Trust and Plan into two separate plans: (1) the Life Investors ERISA Ownership Participation Plan and Trust and (2) the Life Investors Ownership Participant Plan and Trust. (ECF No. 61-39). Life Investors explains that the Plan was split in two because the old plan had covered both employees and independent contractor agents and they wanted to make clear that only employees were covered under the new ERISA Plan. (ECF Nos. 61-41 and 61-44). Accordingly, the non-ERISA plan was amended and restated as of November 1, 1994, to cover only "non-employee Sales Representatives, General Agents and Marketing Directors of Participating Companies" (ECF No. 61-40, at 1) and the ERISA plan was amended and restated to apply only to employees. (ECF No. 61-44). The new ERISA plan contains no provision limiting distributions if a participant is indebted to a participating company and does contain a non-alienation provision. (ECF No. 61-45). The division was accomplished by creating sub-accounts within the Group Annuity Contract Y74552, which had previously held the entire trust. The combined value of the ERISA and non-ERISA subaccounts after the division was equal to the value of the combined Group Annuity Contract Y74552 pre-division and no termination or other fees were charged as a result of the creation of the subaccounts. (*See* ECF Nos. 61-50,

7

at 46; 61-30, at 1; 61-51 ¶ 58; and 61-52, at 5). Corrado and FCR's accounts were included in the non-ERISA Plan, and after the division the annual benefits statements sent to Corrado and FCR were titled OPT NON ERISA. (ECF No. 61-54)(comparing LI-MD 00001-00004 with LI-MD 00005-00010).

On June 25, 2007, Corrado requested withdrawals from his own OPT account and FCR's OPT account. (ECF Nos. 61-55, and 61-56). No amounts were distributed to Corrado or FCR in response to these requests because the balance in their accounts was less than their unsettled debt to BULAC. In a letter dated July 3, 2007, Corrado and FCR were notified that their "OPT account balance is being held as collateral" to secure their debts. (ECF No. 61-59). By that time Life Investors claims the principal debt plus interest owed by Plaintiffs was $1,309,706.84. (ECF No. 60-1, at 13).[2] On August 10, 2007,

_____

[2] Life Investors and Plaintiffs were parties to a separate case in the Northern District of Iowa. In that case, Life Investors sued the Corrado Estate and FCR for breach of the parties' contract in which Mr. Corrado and FCR had agreed to pay Life Investors back for commission advances together with interest and that the parties entered into a settlement agreement regarding sums due to Life Investors under that contract in 1993. The Corrado Estate and FCR challenged the validity of the settlement agreement and contended that their signatures had been forged. The court granted summary judgment for Life Investors and ordered the Corrado Estate and FCR to pay Life Investors the amount of $688,957.50 together with any interest on the promissory notes and ordered Life Investors to submit an interest calculation on the notes to be incorporated in the judgment. (ECF No. 61-34, Order in Life Investors

Plaintiffs' counsel sent a letter stating "unless we receive written assurances from OPT that it will not honor any claim by Life Investors or any other third party against any amount held by Mr. Corrado or the Federal City Region, Inc., we will bring an action in a court of appropriate jurisdiction to redress the serious breaches of fiduciary duty . . . ." (ECF No. 61-61, at 4). The letter also included a request for Plan documentation, including the same list of documents that was present in the letter sent by Plaintiffs' counsel in 2001. No documents were provided in response to the letter nor were any distributions made from Corrado or FCR's OPT account. (*Id.* at 5).

Plaintiffs filed their initial complaint in this case on January 2, 2008. (ECF No. 1). Defendants filed a motion to dismiss for lack of subject matter jurisdiction that was denied (ECF Nos. 7 and 26). Plaintiffs amended their complaint, Defendants again moved to dismiss for lack of subject matter jurisdiction, and the court again denied the motion. (ECF Nos. 27, 28, and 40). Plaintiffs then filed the second amended complaint which states the claims currently at issue and

Insurance Co. of Am. v. Estate of John M. Corrado and Federal City Region Inc., No. 08-cv-51 (EJM)(N.D. Iowa June 3, 2010). Life Investors submitted an interest calculation to that court under seal and claims the total amount owed (debt plus interest) is $1,309,706.84. (ECF No. 61-38).

the parties conducted discovery. The second amended complaint includes six counts. (ECF No. 46). Counts I, II, and III allege that Defendant Trustees breached fiduciary duties in violation of 29 U.S.C. §§ 1104, 1106(a)(1)(D), 1106(b)(2). Count IV alleges that Defendant Life Investors knowingly participated in the Trustees' breach of their fiduciary duties and is also liable. Count V alleges that the Plan and Trustees failed to provide documentation regarding the ERISA plan in violation of 29 U.S.C. § 1132(c). And count VI alleges that Defendants unjustifiably refused to provide Plaintiffs' benefits as requested and are liable for the amount denied. Plaintiffs also seek attorneys fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

Defendants filed their present motion for summary judgment on June 30, 2010. (ECF No. 60). Plaintiffs opposed this motion and filed their own cross motion for summary judgment. (ECF No. 62).

## II. Analysis

### A. Standard of Review

Plaintiffs and Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

*See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 377 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be

11

"sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.), *cert. denied*, 540 U.S. 822 (2003) (internal quotation marks omitted); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F.Supp.2d 402, 406 (D.Md. 2003)(citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1983)). The court reviews each motion under the familiar standard for summary judgment. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

## B. Motions for Summary Judgment

Defendants seek summary judgment on all counts of Plaintiffs' complaint. They argue that Plaintiffs are not entitled to any benefits under the Plan because their claims are

time-barred and because they are not participants or beneficiaries of participants as those terms are defined under ERISA and thus are ineligible to receive benefits. Defendants contend that these limitations also preclude recovery for breaches of fiduciary duty and argue that, regardless, Plaintiffs have failed to state a claim for breach of fiduciary duty. Similarly, Defendants contend that the claim for civil penalties arising from Defendants' failure to provide Plan documentation when requested is time-barred. (ECF No. 60-1, at 3).

Plaintiffs oppose Defendants' motion for summary judgment and simultaneously seek summary judgment in their favor. Plaintiffs contend that their claims are timely and that the material facts not in dispute establish that the Plan division in 2003 was illegal and could not have occurred but for Defendant Trustees' breaches of fiduciary duties. (ECF No. 62-1, at 1).

### 1.   Claim for Benefits—Count VI

Defendants argue that Plaintiffs' claim for benefits is barred by the statute of limitations. Defendants contend that the relevant statute of limitations for the claim is three years and that Plaintiffs' claim accrued when Defendants denied their requests to withdraw the full balance of their accounts in 2000. Thus, when Plaintiffs filed this lawsuit in 2008, they were five

years too late. (ECF No. 60-1, at 20-24). Plaintiffs do not dispute that a three year statute of limitations applies, but argue that the claim accrued on July 3, 2007, when their most recent requests for benefits were denied and Life Investors stated that the balance of the accounts was being held as collateral for their alleged debt. (ECF No. 62-1, at 27).

Because ERISA does not include a statute of limitations for private causes of action asserting claims other than breach of fiduciary duty, courts look to the law of the forum state for an analogous statute of limitations. *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir. 1987)(citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Actions to recover benefits allegedly due under the terms of an ERISA plan are akin to claims for breach of contract. *Id.* (citing *Jenkins v. Local 705 Intern. Broth. of Teamsters Pension Plan*, 713 F.2d 247, 252 (7th Cir. 1983)). In Maryland the statute of limitations for contract actions is three years. *See* Md. Code Ann., Cts. & Judic. Proc. § 5-101.

Although the analogous state statute of limitations establishes the time period within which a suit must be brought, federal law determines the time at which the cause of action accrues. *White v. Sun Life Ins. Co. of Canada*, 488 F.3d 240, 245 (4th Cir.), *cert. denied*, 552 U.S. 1022 (2007). Claims for denied benefits typically accrue when the benefits are requested

and formally denied. *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir.), *cert. denied*, 493 U.S. 872 (1989). But courts may also apply "the alternative approach of determining the time at which some event other than a denial of a claim should have alerted [the claimant] to his entitlement to the benefits he did not receive." *Cotter v. E. Conf. of Teamsters Retirement Plan*, 898 F.2d 424, 429 (4th Cir. 1990); *Cecil v. AAA Mid-Atlantic, Inc.*, 118 F.Supp.2d 659, 666 (D.Md. 2000); *see also Dameron*, 815 F.2d at 982, n.7 (statute began to run when defendant notified plaintiff of its intent to reduce benefits); *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir.)(ERISA cause of action accrues "when there has been 'a repudiation by the fiduciary which is clear and made known to the beneficiar[y]'")(citations omitted), *cert. denied*, 464 U.S. 829 (1983); *Martin v. Constr. Laborer's Pension Trust*, 947 F.2d 1381, 1385 (9th Cir. 1991)(holding that a participant's cause of action to enforce rights under a pension plan accrues upon a "clear and continuing repudiation of his claim."); *Miller v. Fortis Benefits Ins. Co.,* 475 F.3d 516, 521 (3d Cir. 2007)("an erroneously calculated award of benefits under an ERISA plan can serve as 'an event other than a denial' that triggers the statute of limitations, as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary.")(internal citations omitted).

Here, Defendants did not hide their intent to claim a right to funds in Plaintiffs' OPT accounts if necessary to secure debts to the participating companies. Article 7.2 of the Fifth Declaration of Trust provided for "assignment of the Participant's account as security for such indebtedness to any Participating Companies." (ECF Nos. 61-12 ¶ 7.2). An analogous provision was included in the operative Restated Declarations of Trust since at least 1975 and each time Plaintiffs requested withdrawals from the accounts, from 1993 to 1999, they confirmed their understanding that the balance of the accounts had to remain sufficient to cover any debts to the participating companies. Defendants' intent to enforce this provision of the Trust Declaration was communicated unequivocally no later than December 26, 2000. On that date, in response to a request by Plaintiffs to close and withdraw the full amounts in the OPT accounts, the Plan administrator noted that when the appropriate forms were submitted only the "net proceeds (after repaying the debt of approximately $812,000) would then be available." (ECF No. 61-26). Plaintiffs understood this to be a restriction on their benefits and communicated that understanding through their counsel in a letter dated March 5, 2001. (ECF No. 61-29). In that letter Plaintiffs acknowledged Article 7.2 of the Trust Declaration as well as BULAC's intention to take money from Plaintiffs' OPT accounts to satisfy debts. (*Id.*). Despite

16

threatening to take legal action, however, Plaintiffs did not file a lawsuit at that time or in the next three years and the statute of limitations ran out. Moreover, the clock did not begin to run anew when Plaintiffs' subsequent requests to withdraw were denied. See *Dameron v. Sinai Hosp.*, 595 F.Supp. 1404, 1414-15 (D.Md. 1984), *rev'd in part on other grounds*, 815 F.2d 975 (4th Cir. 1987); *Miller*, 475 F.3d at 522 (rejecting continuing violation theory whereby a new cause of action would accrue upon each underpayment of benefits).

Defendants also contend that Plaintiffs are not entitled to recover because they are neither participants nor the beneficiaries of participants of the Plan and ERISA contains a provision requiring that plan fiduciaries act "for the exclusive purpose of providing benefits to participants and their beneficiaries," (ECF No. 60-1, at 25)(quoting 29 U.S.C. § 1104(a)(1)(A)(i)), and a provision specifying that "the assets of a plan . . . shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." (*Id.*)(quoting 29 U.S.C. § 1103(c)(1)). In a prior ruling in this case, Defendants' argument that Plaintiffs are not beneficiaries was rejected. (ECF No. 40, at 14-16). That ruling need not be revisited here because the statute of limitations provides an independent ground for granting summary judgment to Defendants on this count.

**2.  Breach of Fiduciary Duty—Counts I-IV**

Defendants also seek summary judgment on Plaintiffs' breach of fiduciary duty claims. Plaintiffs have alleged that Defendant Trustees breached their fiduciary duties in three ways. In count I, Plaintiffs allege that Defendant Trustees breached the fiduciary duty imposed by 29 U.S.C. § 1104(a)(1)(A) to act for the exclusive purpose of providing benefits to Plan participants and beneficiaries when they conspired with Life Investors to divide the Plan in 2003 and thereby strip the OPT accounts of Plaintiffs and other non-employee beneficiaries of the protections of ERISA, including the anti-alienation provisions. (ECF No. 46 ¶¶ 74-83).[3] In count II, Plaintiffs allege that Defendant Trustees breached the fiduciary duty

---

[3] 29 U.S.C. § 1104(a)(1)(A) provides:

> (1) Subject to sections 1103(c) and (d),
> 1342, and 1344 of this title, a fiduciary
> shall discharge his duties with respect to a
> plan solely in the interest of the
> participants and beneficiaries and--
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and
> their beneficiaries; and
>
> (ii) defraying reasonable expenses of
> administering the plan . . . .

Plaintiffs also allege that "by asserting control over the 1987 OPT's assets [Life Investors] became a fiduciary charged with the same duties as the Trustees." (ECF No. ¶ 81). Thus, Plaintiffs also seek to hold Life Investors liable in count I.

imposed by 29 U.S.C. § 1106(A)(1)(D) by consenting to the transfer of Plan assets in 2003 for the sole benefit of Life Investors, a party in interest to the 1987 OPT. (*Id.* ¶¶ 84-89).[4] In count III, Plaintiffs allege that Defendant Trustees breached the fiduciary duty imposed by 29 U.S.C. § 1106(b)(2) because they took insufficient actions to resolve the conflict of interest created by the fact that the Trustees were officers or employees of Life Investors and they consented to the transfer of Plan assets in 2003 benefitting Life Investors to the detriment of Plan participants and beneficiaries. (*Id.* ¶¶ 90-97).[5] Finally, in count IV, Plaintiffs allege that Life

---

[4] 29 U.S.C. § 1106(A)(1)(D) provides:

> (a) Transactions between plan and party in interest
>
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— . . .
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . .

"Party in interest" is defined to include "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee" of an ERISA plan, "an employer any of whose employees are covered by such plan," and "an employee organization any of whose members are covered by such plan." 29 U.S.C. §§ 1002(14)(A), (C), and (D).

[5] 29 U.S.C. § 1106(b)(2) provides:

Investors is liable for its knowing participation in the Trustees' breaches of their fiduciary duties. (*Id.* ¶¶ 98-102).

Defendants argue that summary judgment on all of the breach of fiduciary duty counts is warranted for four reasons. They argue first that these claims are time barred. Second, Defendants argue that because there has been no loss to the Plan, Plaintiffs have no claim for damages. Third, Defendants contend that the division of the Plan was in the best interest of the Plan's participants and beneficiaries and not a breach of any fiduciary duty. Finally, Defendants argue that ERISA's anti-alienation provision did not apply to the Plan benefits at issue before or after the split and does not provide a basis for Plaintiffs to recover. (ECF No. 60-1, at 35).

Plaintiffs argue that Life Investors orchestrated the 2003 transfer of Plan assets for its own benefit and without following proper procedures. (ECF No. 62-1, at 11). Plaintiffs argue that the transfer was not in the best interests of the Plan participants and beneficiaries because it created a means

(b) Transactions between plan and fiduciary
A fiduciary with respect to a plan shall not—
(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries,

by which Life Investors could claim ownership of money in participant accounts, thereby diminishing the value of the assets. (*Id.* at 11-14). Plaintiffs contend that by allowing this transfer to proceed, the Trustees breached their fiduciary duty. (*Id.*). With respect to the alienation provision in the 1987 OPT, Plaintiffs contend that it was illegal and severable and thus Life Investors could not reach assets in any OPT accounts prior to the Plan division in 2003. (*Id.* at 10-11). Plaintiffs also contend that there is a dispute of fact regarding how the Plan was administered before 2003 and whether the Plan engaged in any acts in violation of ERISA's anti-alienation provisions. (*Id.* at 14-15).

The operative statute of limitations for breach of fiduciary duty claims arising under ERISA is found in 29 U.S.C. § 1113. It provides:

> [n]o action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or
> concealment, such action may be commenced
> not later than six years after the date of
> discovery of such breach or violation.

In brief, actions for breach of fiduciary duty may not be commenced more than three years after the earliest date on which the plaintiffs had actual knowledge of the breach or violation, or alternatively, more than six years after the date of the last action which constituted a part of the breach or violation.

Defendants argue that Plaintiffs' benefits were assigned to secure debts to the Company in 1977, that Plaintiffs admitted their knowledge of this assignment when they requested a withdrawal of benefits in 1993 and every time thereafter, and that Plaintiffs knew the Plan administrator was honoring the assignment when their request for full benefits was denied in 2000. Thus Plaintiffs' claims are now time-barred. (ECF No. 60-1, at 28-29). Plaintiffs counter that their breach of fiduciary duty claims stem, not from the assignment of their Plan benefits, but from the transfer of Plan assets in 2003, an act Plaintiffs first learned of in the course of this litigation. Thus, Plaintiffs contend that their inclusion of claims for breach of fiduciary duty in the First Amended Complaint occurred less than three years after they acquired knowledge of the breach and was timely. (ECF No. 62-1, at 23).

In addition, Plaintiffs argue that the breach itself occurred in 2003, less than six years before the case was filed. (*Id.*).

Defendants' statute of limitations argument misconstrues the basis for Plaintiffs' breach of fiduciary duty claims. These claims relate to the division of the Plan into separate ERISA and non-ERISA plans in 2003 and whether the Trustees of the Plan observed their fiduciary duties at that time. Accordingly, the statute of limitations had not run for the breach of fiduciary duty counts at the time the complaint was filed.

Defendants' next contention is that Plaintiffs cannot recover because there was no loss to the Plan as a result of the division. Defendants argue that the only losses alleged by Plaintiffs are a termination fee and the Plan's costs of defending the instant lawsuit, neither of which is supported by any facts or evidence. (ECF No. 60-1, at 30). Although, the second amended complaint alleges that a termination fee was assessed to the non-ERISA plan in 2003 (ECF No. 46 ¶ 61), Defendants stated in an interrogatory response that no termination fee was charged when the Plan was divided (ECF No. 61-52, at 5, Defendant Life Investors Insurance Co. of America's Answers to Plaintiffs' Second Set of Interrogatories, Response to Interrogatory No. 8), and Plaintiffs have produced no evidence to rebut this. Likewise there is no evidence that any

Plan funds have been used to pay for costs associated with this lawsuit. Accordingly, Defendants are not liable in damages to Plaintiffs for losses to the Plan. This does not end the inquiry for the fiduciary duty claims, however, because Plaintiffs are also seeking equitable relief in the form of an order directing the Trustees to reverse the Plan division or to place a constructive trust on the assets transferred to the non-ERISA plan. (ECF No. 46 ¶¶ 83, 89, 97, and 102).

Defendants next argue that they did not breach their fiduciary duties. Specifically Defendants contend that the duties of fiduciaries in connection with the division of a Plan are specified in ERISA § 208 (29 U.S.C. § 1058) which provides:

> A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan after September 2, 1974, unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated). The preceding sentence shall not apply to any transaction to the extent that participants either before or after the transaction are covered under a multiemployer plan to which subchapter III of this chapter applies.

Defendants note that this section does not establish any duty owed to beneficiaries and argues that the general fiduciary duties outlined in ERISA §§ 404(a) or 406 (29 U.S.C. §§ 1104 and

1106) should not be used to expand the scope of ERISA § 208. In so arguing Defendants rely on the principle that specific provisions of a statute govern the more the general ones, a general principle of statutory construction that has been adopted by the Fourth Circuit in its interpretation of ERISA. (ECF No. 60-1, at 33)(citing *Faircloth v. Lundy*, 91 F.3d 648, 657 (4th Cir. 1996), *cert. denied*, 519 U.S. 1077 (1997)). While the Fourth Circuit has not had an occasion to rule on the specific question of whether ERISA § 208 supersedes § 404(a), the Eighth Circuit has so held and its decision was relied on by the Fourth Circuit in *Faircloth*. *See Bigger v. Am. Commercial Lines*, 862 F.2d 1341, 1344-47 (8th Cir. 1988)(holding that section 1104 does not supersede section 1058)(cited in *Faircloth*, 91 F.3d at 657).[6]

---

[6] Defendants argued in their second motion to dismiss that the decision to divide the Plan was a settler function not subject to fiduciary obligations. (ECF No. 39, at 3-4). At that time, the court was obligated to assume the truth of Plaintiff's factual allegations, including the allegation that Defendants had imposed a termination fee to Plaintiffs' accounts at the time of the division, thereby diminishing the value of the assets therein. In light of this allegation, it appeared that the Plan's division was more akin to the traditional fiduciary functions of managing and administering the Plan, *see* 29 U.S.C. § 1002(21)(A), rather than the settler functions relating to Plan structure, such as amending, modifying, or terminating a Plan. *See Hughes Aircraft Co v. Jacboson*, 525 U.S. 432, 444 (1999)(stating that ERISA's fiduciary duty requirement is not implicated for a "decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are

Plaintiffs argue in response that § 208 does not provide a safe harbor for Defendants because it pertains only to transfers of assets between "plans" as specifically defined and understood in the context of ERISA. Plaintiffs argue that a plan for ERISA purposes is "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." (ECF No. 62-1, at 16)(quoting 29 U.S.C. § 1002(3)). They contend that the non-ERISA plan to which their OPT Funds were transferred is not such a plan and thus § 208 was inapplicable to the Defendants' transfer of funds. (ECF No. 62-1, at 16). Additionally, Plaintiffs argue that the benefits under the new plan are not equal to those in the old plan because they are subject to greater restrictions, namely the alienation provisions.

Plaintiffs' characterization of the impact of the Plan division in 2003 is not accurate. The 1987 OPT contained the same alienation provisions as the non-ERISA Plan created in 2003. The value of the assets in Plaintiffs' accounts did not

---

calculated"); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78(1995)(holding that decision whether to terminate an ERISA plan is a settler function immune from ERISA's fiduciary obligations); *Lockheed Corp. v. Spink*, 517 U.S. 882, 889-90 (holding that altering terms of an ERISA plan is not a fiduciary function). It is not necessary to decide whether the decision to divide the Plan in 2003 was a fiduciary or settler function because Plaintiffs have not established a breach.

change with the division, nor did Defendants' position with respect to their ability to access funds in those accounts to satisfy debts Plaintiffs owed to participating companies change. Before the Plan division, to the extent the 1987 OPT was classified by Defendants as an ERISA Plan, Plaintiffs could have challenged the alienation provision as violative of section 206(d) of ERISA, but they are now time-barred from doing so. Aside from the general argument against the alienation provision, Plaintiffs have identified no other aspect of the Plan's division that benefitted a party-in-interest. In addition, Plaintiffs have identified no evidence in support of their theory that the Plan was divided as part of a "conspiracy" whose sole purpose "was to make funds in the account of John Corrado and others available to the Insurance Company to satisfy any debit it asserted." (ECF No. 46 ¶¶ 76, 82, 86). Defendants maintain that the Plan was divided for two reasons: "(1) to make technical conforming amendments to the part of the Plan covering only agents, so that the Plan would continue to be maintained as the Company had intended and (2) to assure that the former employees would be covered by a plan that had the protections of ERISA." (ECF No. 64, at 12). Plaintiffs have produced no evidence to call these motivations into question other than mere speculation. Without any evidence that the Plan's division benefitted Life Investors or another party-in-

interest or that it harmed the Plan's participants, Plaintiffs
have not established a breach of the fiduciary duties set forth
in 29 U.S.C. §§ 1104(a)(1)(A), 1106(A)(1)(D), and 1106(a)(b)(2).
Nor can Life Investors be said to have participated in a breach.
For these reasons summary judgment will be granted to Defendants
on counts I, II, III, and IV.

### C.    Failure to Provide Plan Documentation Count V

Plaintiffs' final claim seeks damages in connection with
Defendants' failure to provide Plan documentation upon request
in violation of 29 U.S.C. § 1132(a).  Defendants argue first
that the claim is time-barred because a one year statute of
limitations applies, Plaintiffs first requested the Plan
documents in 2001, and their later request for the same
materials cannot revive their claim.  (ECF No. 60-1, at 37-38).
Defendants also contend that Plaintiffs are not entitled to
damages because they are not the "administrators" as defined by
ERISA and thus cannot be held liable and because the documents
they requested were outside the scope of § 1002.  (ECF No. 60-1,
at 39-42).  Plaintiffs counter that the statute of limitations
has not run because the Plan documentation they requested in
2007 was different from their request in 2001 due to the
division of the Plan in 2003.  (ECF No. 62-1, at 25).
Plaintiffs contend that their claim was filed timely within one
year of the 2007 denial of their request.  (*Id.*).  Plaintiffs

also argue that penalties may be assessed against Defendant Trustees for failure to provide information as required by ERISA. (*Id.* at 26)(citing *Tait v. Barbknecht & Tait Profit Sharing Plan*, 997 F.Supp. 763, 773 (N.D.Tex. 1997)).

The ERISA provision giving rise to Plaintiffs' § 1132 claim provides, in pertinent part, that:

> [a]ny administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B). Section 1132 specifies that "[a] civil action may be brought . . . by a participant or beneficiary . . . for the relief provided for in subsection (c) of this section." *Id.* § 1132(a)(1)(A). As with the claim for benefits in count VI, ERISA does not specify a statute of limitations for such claims and so the court must look for an analogous forum state law. Here the analogous state law limitation period is Maryland's one year statute of limitations for suits for fines, penalties, and forfeitures. Md. Code Ann.,

Cts & Judic. Proc § 5-107. *See also Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 337–39 (4th Cir. 2009)(applying state law statute of limitations for actions upon a statute for penalty or forfeiture to a claim arising under 29 U.S.C. § 1132(c)).

Plaintiffs made requests for Plan documents on two occasions, in March 2001 and August 2007. Plaintiffs seek penalties relating to the Defendants' denial of the 2007 request only, but Defendants contend that the 2007 request was simply an attempt to revive a stale claim relating to the 2001 request. While Plaintiffs requested the same categories of documents both times, a different Plan was in place in 2007 as a result of the Plan division that occurred in 2003. Plaintiffs' 2007 request was therefore substantively distinct and not merely a resuscitation of its prior request. Plaintiffs' action for penalties relating to Defendants' denial of this later request is therefore timely.

Having established that only claims arising in 2007 are not time-barred, Plaintiffs face a new hurdle. In 2007 their accounts were in a non-ERISA plan. 29 U.S.C. § 1132 relates to enforcement of ERISA protections and procedures and does not provide a remedy for participants in non-ERISA plans. Although Plaintiffs argue that the 2003 transfer was illegal and the Plan in 2007 should be subject to ERISA, (*see, e.g.,* ECF No. 65,

at 17), they have not proven this fact or even raised a dispute of fact regarding the transfer's legality. Because ERISA did not apply to the plan in 2007, Plaintiffs cannot recover on count V.

## III.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted and Plaintiffs' cross motion for summary judgment will be denied. A separate Order will follow.


                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge